IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEAL NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 4718 |
| | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| UNITED STATES ARMY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Neal Nelson ("Nelson") develops and sells business-oriented software applications. One such product, the X-Remote Terminal Emulation ("X-RTE") software suite, allows users of newer computers to access programs written for older machines. Nelson licensed the X-RTE for use by the United States Army ("Army") in the late 1990s, but he now suspects the Army is making the software available to third parties, thereby violating the licensing agreement and interfering with Nelson's own commercial interest in marketing the software. To investigate these concerns, Nelson filed five Freedom of Information Act ("FOIA") requests seeking information concerning any non-government organizations that paid the United States Army ("Army") for use of its computer network testing facility. Nelson's requests sought information spanning the period from 2001 through 2011. The Army released information in response to two of Nelson's requests, but withheld certain data, primarily under the FOIA exemption that protects the confidential commercial information of third parties from disclosure. Nelson now brings this *pro se* action against the Army, under 5 U.S.C. § 552 *et seq.*, to compel Defendant to turn over additional documents in response to his FOIA requests. Plaintiff further alleges that the Army's incomplete disclosures entitle him to relief under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, and he asks the court to equitably toll the statute of limitations regarding any future claims he may bring against Defendant. The Army requested, and received, permission to bifurcate issues for the purpose of summary

judgment [13]. Defendant now moves for summary judgment on Plaintiff's FOIA claims based solely upon Plaintiff's alleged failure to exhaust his administrative remedies [16]. For the following reasons, Defendant's motion is granted in part and denied in part.

## **BACKGROUND**

The Army operates a Technology Integration Center ("TIC") at Fort Huachuca, Arizona. (Def.'s Mem. of L. in Support of Def.'s Mot. for Summ. J. [17] (hereinafter "Def.'s Mem."), at 1.) The TIC maintains a computer-network testing facility where non-government commercial vendors seeking to do business with the government can submit their products for evaluation to ensure compatibility with existing Army network infrastructure. (*Id.*)

**I.     2008 FOIA Request**

Plaintiff's involvement with the TIC originated in approximately 1988 when he began to provide computer consulting and software licensing services to the Army at Fort Huachuca. (Compl. [1] ¶ 9.) In 1998 the Army purchased from Plaintiff a license to use X-Remote Terminal Emulation ("X-RTE"), computer software developed and owned by Nelson; but at some point in 2004 Plaintiff came to believe that the TIC was using his software in violation of both the terms of the licensing agreement and Army policy. (*Id.* ¶¶ 10-13.) Plaintiff informed General Michael Mazzucchi, Commanding General of the Army's Communications Electronics Command ("CECOM"), of these concerns in a letter dated August 1, 2005. (*Id.* ¶ 66.) In response, General Mazzucchi initiated an investigation with the CECOM Inspector General, which culminated in a report dated November 21, 2006. (Report of Inquiry Case Number XC-05-0149, Ex. 10 to Compl.) The published, redacted report concluded that the activities at the TIC violated neither the software license nor Army regulations. Plaintiff believes, however, that an earlier version of the report came to the opposite conclusion. (Compl. ¶¶ 71, 73.) Based on this belief, Plaintiff filed a FOIA request on February 12, 2008 seeking selected pages from the "original" draft version of the Inspector General's report. (FOIA Request of 2/12/08, Ex. 5 to Compl.) This FOIA request was denied in its

entirety on March 7, 2008 in a letter from Defendant's Deputy Legal Advisor Margaret Baines. (Letter from Baines to Nelson of 3/7/08, Ex. 5 to Compl.) Baines explained that the draft report was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5) ("FOIA Exemption 5"), which "protects against premature disclosure of proposed policies . . . ." (*Id.*) Plaintiff appealed Baines's decision on March 16, 2008. (Compl. ¶ 75.) On December 8, 2008, Defendant's Associate Deputy General Counsel Ronald Buchholz, acting on behalf of the Secretary of the Army, issued the final decision on this request. (Letter from Buchholz to Nelson of 12/8/08, Ex. 5 to Compl.) While Nelson's request was initially denied under Exemption 5, Buchholz wrote that "denial under Exemption 5 was inadvertent, and that the appropriate response should have been a 'no records' finding." (*Id.*) Defendant claims that "there was no draft report to produce, as CECOM routinely destroys draft reports . . . ." (Talbot-Bedard Decl. ¶ 15, Ex. A to Def.'s 56.1 [18].) According to Buchholz, "even if such a draft had existed, it would have been properly denied under Exemption 5." (*Id.*) It is undisputed that Nelson has administratively exhausted this FOIA request by receiving an adverse appellate determination from the head of the agency, and may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B). (Def.'s Rep. [24] at 1-2.)

## II. 2007 and 2009 FOIA Requests

After initially seeking and failing to obtain information from the Army regarding the TIC's use of X-RTE (but prior to filing his 2008 FOIA request discussed above), Nelson sent the first of his FOIA requests to the U.S. Army Garrison in Fort Monmouth, New Jersey on March 5, 2007. (Pl.'s 56.1 [20] ¶ 5.) This request sought access to information regarding "all non-government organizations that [had] paid to use the [TIC]" between 2001 and 2006, including the organizations' identities, the amounts they paid the Army, and what tests they performed at the TIC. (FOIA Request of 3/5/07, Ex. 2 to Compl.) On September 12, 2007, Plaintiff filed a second FOIA request through his representative in Congress, Rep. Dennis Hastert, seeking substantially the same information he had requested in March of that year. (FOIA Request of 9/12/07, Ex. 3 to Compl.)

3

Then, on January 22, 2009, while still awaiting action on his 2007 requests, Plaintiff submitted another FOIA request to Fort Monmouth, again seeking "[i]nformation about non-government organizations that have paid to use the 'commercial' testing facilities at the TIC between January 2001 and present." (FOIA Request of 9/12/07, Ex. 4 to Compl.) The 2007 and 2009 FOIA requests were ultimately processed together by Army FOIA Officer Ellen Edwards and denied due to Plaintiff's failure to pay pre-disclosure notification ("PDN") fees associated with his request. (Pl.'s 56.1 ¶ 8.)

These requests later became the subject of litigation in which Nelson alleged that the Army improperly processed his requests, that its fees were inaccurately estimated, and that no PDN was required. *Nelson v. U.S. Army*, No. 10 C 1735, 2011 WL 710977, at *1 (N.D. Ill. Feb. 22, 2011). This court granted summary judgment in favor of the Army, dismissing Plaintiff's case "without prejudice to renewal of Plaintiff's FOIA request upon payment of the costs of [PDN]." *Id.* at *9. On March 29, 2011, following final judgment in that litigation, Plaintiff issued a check for $1159 to the Army to cover the PDN fees related to his FOIA requests. (Pl.'s 56.1 ¶ 9.) Upon receipt of Plaintiff's payment, the Army TIC began pre-disclosure processing, contacting affected vendors and assessing their potential exposure to substantial competitive harm as a result of possible disclosures related to Plaintiff's FOIA requests. (*Id.*) Defendant's processing of Nelson's FOIA requests lasted several months, during which FOIA Officer Connie Quinn provided Plaintiff with status updates and two interim releases on November 29, 2011 and December 12, 2011. (*Id.* ¶¶ 9-10.) Quinn transmitted the final release in response to the 2007 and 2009 FOIA requests on March 12, 2012 in the form of a spreadsheet listing vendors, dates of service, and amounts paid. (Ex. 7 to Compl.) The next day, March 13, 2012, Quinn e-mailed Plaintiff clarifying that five vendors' entries in this release had been redacted pursuant to 5 U.S.C. § 552(b)(4) ("FOIA Exemption 4") to protect the vendors from potential competitive harm. (*Id.* ¶ 11.) Plaintiff believed, however, that these redactions were improper; and later that day, he e-mailed Quinn requesting a

4

formal denial from the Initial Denial Authority ("IDA").[1]  On April 19, 2012—37 days later—the IDA, CECOM Chief Counsel Maria Esparraguera, issued a decision upholding some of Officer Quinn's redactions based on FOIA Exemption 4, but requiring disclosure of certain other materials Quinn had marked for redaction.[2]  (*Id.* ¶¶ 11-12.)

Esparraguera's denial letter also informed Plaintiff of the procedure for further appellate review:  "You may appeal this denial to the Secretary of the Army . . . the appeal letter must be received . . . within sixty (60) days of the date of this letter." (Letter from Esparraguera to Nelson of 4/19/12, Ex. A to Def.'s 56.1.)  The Army never received an appeal from Nelson regarding his 2007 and 2009 FOIA requests.  (Pl.'s 56.1 ¶ 12.)  Therefore, it argues, Plaintiff has not exhausted his administrative remedies and his claims related to these requests should be dismissed.  (Def.'s Mem. at 8.)  Plaintiff contends, however, that the matter of his appeal is moot, because the Army issued its IDA decision more than a month after Nelson filed his appeal, thereby failing to meet the 20-day statutory deadline.[3]  The missed deadline, Plaintiff argues, served to constructively exhaust his administrative remedies and, as a result, he "was not required to perform any additional administrative appeals" prior to seeking judicial review.  (Nelson Decl. [22] ¶¶ 14-16.)  Plaintiff further contends that the Army failed to comply with the FOIA's time limits for his appeals dated March 16, 2008, May 28, 2008, and June 22, 2009, as well.  (*Id.* ¶ 13.)

---

[1]    Pursuant to Army regulations, FOIA Officers are authorized to release records in response to FOIA requests, but only IDAs have authority to deny portions of FOIA requests.  32 C.F.R. § 518.16(a).  FOIA requesters may appeal IDA decisions to the Secretary of the Army within 60 days.  32 C.F.R. § 518.17(a), (c).  The decision of the Secretary of the Army is considered a final determination and is subject to judicial review in U.S. District Court.  32 C.F.R. § 518.18.

[2]    Esparraguera's decision upheld three of Quinn's five redactions and overturned two for vendors IBM and Fortinet.  These two entries were subsequently produced without redactions and included in a spreadsheet attached to the IDA decision. (Letter from Esparraguera to Nelson of April 19, 2012, Ex. A to Def.'s 56.1.)

[3]    "Each agency, upon any request for records . . . shall . . . make a determination with respect to any appeal within twenty days . . . after the receipt of such appeal."  5 U.S.C. § 552 (a)(6)(A)(ii).

Plaintiff alternatively argues that he is entitled to judicial review of his September 12, 2007 and January 22, 2009 FOIA requests, because Defendant indicated as much in letters from Buchholz dated February 9, 2009 and March 1, 2010, respectively. (Nelson Decl. ¶¶ 4-5.) In each of these letters, Buchholz wrote, "This letter constitutes final action on behalf of . . . the Army . . . You may, if you so desire, seek judicial review of this determination through the federal court system in accordance with the provisions of the FOIA, 5 U.S.C. § 552(a)(4)(B)." (Nelson Decl. ¶¶ 4-5.) As Defendant points out, however, these letters from Buchholz refer to Plaintiff's appeals regarding the PDN fees at the heart of the parties' prior litigation, not the IDA determination at issue in the instant case. (Def.'s Rep. at 2.) In fact, Buchholz wrote both letters over two years before Esparraguera rendered the relevant IDA decision in April 2012. (*Id.*)

## III.     2012 FOIA Request

During the Army's processing of Plaintiff's 2007 and 2009 FOIA requests, Plaintiff filed his fifth and final FOIA request in this matter. (FOIA Request of 1/13/12, Ex. 6 to Compl.) Plaintiff mailed that request to his congressional representative on January 13, and it reached the Army FOIA officer on January 24, 2012. (Letter from Quinn to Nelson of 4/24/12, Ex. 6 to Compl.) This request sought significantly more detailed information than his prior requests regarding the funds collected from non-government organizations that used the TIC at Fort Huachuca between 2001 and 2011.[4] (Pl.'s 56.1 ¶¶ 15-16.) The Army set an initial response date of February 23, 2012 for this request, but Quinn wrote a letter to Plaintiff on that date extending the deadline to March 23, 2012. (Letter from Quinn to Nelson of 2/23/2012, Ex. 6 to Compl.) The Army estimated that the

---

[4]     Specifically, Plaintiff's January 13, 2012 FOIA request sought: "(1) each date when any funds were received, (2) the amount of money received by date, (3) the date when any portion of those funds were disbursed, (4) the amount of money disbursed by date, (5) the person or organization to whom the funds were disbursed, and (6) details for justification, purpose, use and/or reason for the disbursement." (FOIA Request of 1/13/12, Ex. 6 to Compl.)

6

fees associated with processing this "significantly more time intensive" request totaled $4,075,[5] but Nelson's request explicitly stated that he agreed to pay only "reasonable duplication fees . . . in an amount not to exceed $100." (Pl.'s 56.1 ¶¶ 15-16.) On April 24, Quinn wrote a letter to Plaintiff explaining that unless he notified the Army by May 1, 2012 that he was willing to pay the processing fee, his request would be administratively closed on that date. (*Id.* ¶ 17.) Quinn contacted Plaintiff again via e-mail on May 1 to remind Plaintiff of the deadline, and when Nelson failed to contact the Army, Quinn closed the request at the end of the following business day. (*Id.*) Plaintiff argues that the Army's failure to meet the 20-day FOIA response deadline laid out in 5 U.S.C. § 552(a)(6)(A)(I) entitles him to judicial review despite the fact he has not paid the required fees. (*Id.*)

## IV.  Bifurcation of Dispositive Motions

Defendant requested [13], and the court granted [15], the bifurcation of dispositive motions in this case. The court agreed to first consider Defendant's motion for summary judgment solely on the issue of administrative exhaustion of Plaintiff's FOIA claims. In its memorandum in support of summary judgment, however, Defendant introduces arguments unrelated to the issue of administrative exhaustion. Defendant's reply memorandum suggests that "judicial economy" (which the Army also cited in support of its motion to bifurcate) counsels in favor of reaching issues beyond exhaustion. (Def.'s Rep. at 6 n.3.) While it may have proven more efficient to address all of Defendant's arguments for summary judgment in a single dispositive motion, Plaintiff was not afforded the opportunity to address issues other than exhaustion to the extent that he relied upon the bifurcation order. Accordingly, for purposes of this motion, the court will address only the issue of administrative exhaustion of Plaintiff's FOIA claims. Upon disposition of this motion, Defendant

---

[5] Officer Quinn provided Plaintiff with a detailed summary of the Army's fee estimates in a letter dated April 24, 2012. The $4,075 estimate consisted of (1) $225 in copy charges, (2) $2,508 in review charges, and (3) $1,342 in search charges. (Letter from Quinn to Nelson of 4/24/12, Ex. 6 to Compl.) Quinn's estimates were based on rates established by the fee schedule of 32 C.F.R. Subpart F.

7

has indicated that, if necessary, it will file an additional motion for summary judgment based on the merits of Plaintiff's remaining claims. (Def.'s Mot. to Bifurcate ¶ 5.)

## **DISCUSSION**

### I.     **Standard of Review**

Defendant seeks summary judgment on the ground that Plaintiff failed to exhaust administrative remedies before he filed this lawsuit. Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010). In determining whether factual issues exist, a court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).

### II.     **FOIA Requests (Count I)**

Plaintiff seeks disclosure of the records sought in his FOIA requests to the Army. For purposes of this motion, Defendant argues only that Plaintiff may not seek judicial review of these requests due to his failure to exhaust the available administrative remedies.

The FOIA was enacted to facilitate public access to Government documents. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). Accordingly, the FOIA generally requires federal agencies to make their records available to the public on demand. 5 U.S.C. § 552(a). This general policy, however, is subject to nine statutory exemptions, which authorize agencies to withhold certain information from FOIA requesters. 5 U.S.C. § 552(b)(1)-(9). In addition to its nine exemptions, the FOIA establishes the process by which FOIA requests are to be filed by requesters and reviewed by agencies. The statute leaves to each agency, however, the task of promulgating its own regulations to govern its responses to FOIA requests. 5 U.S.C. § 552(a)(1). For instance,

8

each agency may "specify[] the schedule of fees applicable to the processing of requests . . . and establish[] procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(I). Pursuant to the FOIA, the Army has promulgated its own regulations regarding the collection of fees for responding to FOIA requests. *See* 32 C.F.R. § 286.29.

Consistent with this elaborate administrative scheme, FOIA requesters must exhaust their administrative remedies prior to seeking judicial review. *Almy v. U.S. Dep't of Justice*, No. 96-1207, 1997 WL 267884, at *3 (7th Cir. May 7, 1997); *see also Oglesby v. U.S. Army*, 920 F.2d 47, 64 (D.C. Cir. 1990).[6] Requesters may exhaust their administrative remedies in one of two ways: (1) "actual" exhaustion or (2) "constructive" exhaustion. A requester "actually" exhausts his or her administrative remedies where an agency's determination is adverse, and that agency determination is subsequently upheld in an administrative appeal "to the head of the administrative agency." 5 U.S.C. § 552(a)(6)(A)(I). Alternatively, a FOIA request is "constructively" exhausted where "the agency fails to comply with the applicable time limit provisions" of the statute. 5 U.S.C. § 552(a)(6)(C)(I). For instance, the FOIA gives agencies only twenty days to (1) determine whether to comply with a request, and (2) respond to any appeal. 5 U.S.C. § 552(a)(6)(A)(I), (ii). But when a requester has filed suit after 20 days have elapsed without a FOIA response, the agency may obtain a stay of the proceedings if it can show that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C).

Where, however, an agency fails to meet the FOIA's deadlines and the requestor

---

[6] Plaintiff suggests that *Oglesby* is inapplicable, but his assertion that "the appeals court vacated the district court's ruling against Oglesby" is inaccurate. (Pl.'s Rep. at 4-5.) In fact, the D.C. Circuit "vacate[d] the order of the district court . . . and remand[ed] with orders to dismiss appellant's claim against these agencies for failure to exhaust his administrative remedies." *Oglesby*, 920 F.2d at 71. Plaintiff may be referring instead to a subsequent case involving the same parties, which dealt with different issues immaterial in this case. *See Oglesby v. U.S. Army*, 79 F.3d 1172 (D.C. Cir. 1996).

nonetheless chooses to wait for the agency to respond prior to filing suit, "the FOIA allows the agencies to have the benefit of the full administrative process before suit is filed." *Oglesby*, 920 F.2d at 64-65; *see also Goulding v. IRS*, No. 97 C 5628, 1998 WL 325202, at *8 (N.D. Ill. June 8, 1998). That is, once an agency responds to a request, the FOIA requires the completion of the administrative appeal process prior to judicial review. Similarly, constructive exhaustion does not relieve requesters of the obligation to pay the fees associated with their requests. *Goulding*, 1998 WL 325202, at *9; *see Oglesby*, 920 F.2d at 66 ("[e]xhaustion does not occur until the required fees are paid or until an appeal is taken from the refusal to waive fees").

### A. 2008 FOIA Request

The parties do not dispute that Plaintiff has exhausted his administrative remedies regarding his 2008 FOIA request: Plaintiff received a denial from the Army's IDA and appealed to the Secretary of the Army, who upheld the IDA's decision. Despite seeking (and receiving the court's permission) to bifurcate its dispositive motions, Defendant now asks the court to review the denial of Nelson's 2008 FOIA request on the merits because "the entire administrative record . . . has been provided." (Def.'s Rep. at 6 n.3.) The court declines this invitation, however, as Plaintiff has not yet had the opportunity to address Defendant's claims on the merits. Indeed, Defendant acknowledges that Nelson's response is focused on the uncontested proposition that his 2008 FOIA request is exhausted. (Def.'s Rep. 6-7.) Accordingly, Defendant's motion for summary judgment based on exhaustion is denied as it relates to Plaintiff's 2008 FOIA request.

### B. 2007 and 2009 FOIA Requests

Defendant argues that it is also entitled to summary judgment on Plaintiff's FOIA requests from 2007 and 2009, because Nelson failed to properly exhaust the administrative remedies at his disposal. (Def.'s Mem. at 7-8.) In response, Plaintiff contends he has exhausted his administrative options both actually and constructively. As proof of actual exhaustion, Plaintiff points to letters from Buchholz dated February 9, 2009 and March 1, 2010 stating that Nelson may now "seek

judicial review of this determination through the federal court system." (Pl.'s Rep. [21] at 4.) Plaintiff also argues that his claim was constructively exhausted "[w]hen the Army failed to respond to Plaintiff's . . . appeal within the time limit specified by the FOIA . . . ." (Pl.'s 56.1 ¶ 14.) Neither of Plaintiff's arguments is persuasive.

As Defendant points out, Buchholz's letters are not relevant to exhaustion of the 2007 or 2009 requests. Those letters address Plaintiff's responsibility to pay PDN fees which were the subject of the parties' prior litigation before this court. In fact, the same letters were cited by the Plaintiff in that suit, which resolved the PDN fee issue in the Army's favor. *See Nelson*, 2011 WL 710977, at *3. Plaintiff ultimately paid the PDN fees in 2011, and in March 2012 the Army completed its disclosures relating to Nelson's 2007 and 2009 FOIA requests. Nelson subsequently sought a formal denial related to the information redacted from Defendant's 2012 disclosures, and the Army IDA issued a formal denial on April 19, 2012. Rather than appealing the IDA decision to the Secretary of the Army, as required to exhaust his administrative remedies, Plaintiff filed the instant suit. Because Plaintiff failed to pursue appellate review from the head of the agency, he has failed to actually exhaust his administrative remedies under the FOIA. Regardless of the timeliness of the Army's initial response to Plaintiff's FOIA requests, Plaintiff has also failed to constructively exhaust his administrative remedies, as Defendant issued its IDA decision, appealable to the Secretary of the Army, prior to Plaintiff's filing suit. As a result, the FOIA requires Plaintiff to complete the administrative appeal process prior to seeking judicial review.

Plaintiff has neither constructively nor actually exhausted the administrative remedies available to him under the FOIA. As a result, judicial review is inappropriate at this time. Defendant's motion for summary judgment is, therefore, granted as to Plaintiff's 2007 and 2009 FOIA requests.

### C. *2012 FOIA Request*

Defendant contends that Plaintiff is not entitled to seek judicial review of his 2012 FOIA

request for failure to exhaust his administrative remedies because Plaintiff failed to pay the fees required to process his request. (Def.'s Mem. at 9-10.) Plaintiff has not directly responded to this argument, instead asserting that his administrative remedies were constructively exhausted because "Defendant failed to meet a deadline that is mandated by the FOIA." (Pl.'s Rep. at 5.) Regardless of whether Nelson has constructively exhausted his administrative remedies, however, he is not entitled to judicial review. Plaintiff is statutorily obligated to pay all fees which the Army is authorized to collect, and constructive exhaustion does not relieve him of this obligation. *See Goulding*, 1998 WL 325202, at *9. Nelson acknowledges that he has not paid the processing fees associated with his 2012 FOIA request, nor has he sought a fee waiver or any other accommodation. Accordingly, Defendant is entitled to summary judgment on Count I as it relates to Plaintiff's 2012 FOIA request.

### III.    APA Claim & Equitable Tolling (Counts II & III)

In addition to his FOIA-related claims, Plaintiff seeks review under the APA (Compl. ¶¶ 144-155), and requests an "equitable tolling" of the statute of limitations "[r]egarding any action" brought in the future by Plaintiff related to the Army's activities at the TIC. (Compl. ¶¶ 156-161.) As the issue of administrative exhaustion is not relevant to either of these claims, summary judgment on Counts I and II is inappropriate at this time. The court notes, however, that both of these claims present uphill battles for Plaintiff. First, under the APA, judicial review of an agency action is appropriate only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. Here, however, the FOIA provides an adequate remedy such that an APA claim seeking the compelled disclosure of records is precluded. *See Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537-538 (7th Cir. 2005). Second, equitable tolling as to hypothetical future actions would also be improper, as the issue is not yet ripe for decision. *See Piekarski v. Amedisys Ill., LLC*, No. 12 C 7346, 2013 WL 2357536, at *3 (N.D. Ill. May 28, 2013) (denying request for equitable tolling as to prospective plaintiffs because it did not present a case or controversy as required by Article III).

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [16] is granted in part and denied in part. Defendant's motion is granted as to Plaintiff's claim regarding his 2007, 2009, and 2012 FOIA requests. The claim relating to Plaintiff's 2012 request is dismissed without prejudice to renewal of this request upon payment of its associated processing costs. Defendant's motion is denied as to Plaintiff's 2008 FOIA request.

ENTER:

Dated: September 25, 2013

_____
REBECCA R. PALLMEYER
United States District Judge